## WOOD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   March 8, 1904.)

**1. RAILROADS—CARE IN APPROACHING—JURY QUESTION.**

The question as to whether a plaintiff in a personal injury action against a railroad company did not use that degree of care and caution in approaching the railroad tracks which he should have done, is for the jury.

**2. INJURY TO STATION AGENT—KNOWLEDGE OF DANGEROUS CONDITION.**

The fact that a station agent has received a telegram announcing that a derailing switch has been placed at his station does not charge him, as a matter of law, with notice of an open trench dug by the company on his own premises in installing the switch, so as to render him guilty of contributory negligence in falling into it.

**3. SAME—OFFICIAL DUTIES.**

The fact that a book of rules made it the station agent's duty to have charge of all the company's property at the station, keep the station and grounds in proper condition, know that all switches and frogs were in safe condition, and be responsible for care and display of switch lamps, did not charge him, as a matter of law, with such notice; the work of constructing switches and supervising tracks belonging to another department of the road.

**4. SAME—PROBABILITY OF INJURY UNDER OTHER CONDITIONS.**

It is not a defense to a station agent's action against the company for injuries from an open trench dug by the company on the agent's premises, and into which he fell on his way to the station house, that, had the trench been upon the company's premises, he still would undoubtedly have fallen in and been injured, just the same.

McLennan, P. J., and Williams, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Charles B. Wood against the New York Central & Hudson River Railroad Company.   From a judgment for defendant, entered on dismissing plaintiff's complaint, and from an order denying a new trial, plaintiff appeals.   Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Fred B. Pitcher, for appellant.

Henry Purcell, for respondent.

HISCOCK, J.   This action was brought by plaintiff to recover damages claimed to have been sustained through falling into a trench constructed in part upon his premises by defendant while building a switch upon its road.   The plaintiff was nonsuited, and such disposition appears to have been made, and its correctness is now sought to be upheld, principally upon the grounds that plaintiff knew or ought to have known of the existence of the trench into which he fell; and, secondly, that if such trench had not been upon his premises, but had been entirely upon the premises of the defendant, he probably would have met this accident, just the same, and therefore ought not to be allowed to recover.   We think that the disposition of the case made by the learned trial justice was incorrect, and should be reversed.

Defendant had a station at what is known as "Evans Mills" **or**

86 N.Y.S.—52

"Evans." Its tracks there run substantially east and west. Easterly of the station house, a highway runs north and south. Adjoining the railroad lands upon the south was a house and lot, occupied at the time of the accident by the plaintiff. Plaintiff was defendant's station agent at the place in question. Upon October 15, 1901, defendant, through its employés, had been engaged in putting a derailing switch at what was known as the "Lawton Siding," at Evans. In so doing, it had constructed a trench 23 inches deep, about 3 feet wide, and extending upon plaintiff's premises about 4 feet. This excavation was located in the line of a passageway extending from plaintiff's front door to the station house, which he was accustomed to use in going back and forth between these points. There was also another pathway extending from the rear of his house to the station house, which he used part of the time. Upon the evening of October 16th, and after it had become dark, plaintiff had occasion, in the course of his business, to go from his house to the station house, and, while proceeding along the first-mentioned pathway or course of travel used by him, ran into the trench as it extended upon his premises, and sustained injuries which occasioned the commencement of this suit.

It seems to be conceded upon the argument of this appeal that the jury had the right to find, upon the evidence, that defendant had, without authority, extended an open trench upon plaintiff's premises, and into which he fell. This being so, it follows that the jury would have had the further right to find that this conduct upon the part of defendant was wrongful and improper, and might be the basis for a recovery by plaintiff.

It is urged that plaintiff did not, upon the occasion of his accident, use that degree of care and caution in approaching the railroad tracks which generally and under ordinary circumstances should be used. We think that this, however, independent of any special considerations applicable to this case, was a question of fact for the jury.

But as stated above, it is especially contended that plaintiff knew or ought to have known of the existence of this trench, and that for this reason he was guilty of contributory negligence. This contention is especially based upon two groups of facts appearing in the case:

Upon October 15th defendant's supervisor of bridges telegraphed from De Kalb to defendant's trainmaster at Watertown that the derailing switch had been placed in the Lawton siding at Evans, and this telegram was sent to plaintiff at Evans, having indorsed upon it: "Note and return: F. E. M." And the plaintiff, upon receipt of it, indorsed thereon, "O. K. C. B. W.," for his initials, and "10/16," for the month and day. Plaintiff admitted upon the stand that the last indorsement was his, and that he knew what switch was referred to at the time. We do not think, however, that this telegram, and this indorsement of plaintiff's thereon, charged him, as matter of law, with knowledge that defendant had dug a trench upon his premises, or created the conditions which it is claimed resulted in his accident. In a general way, his indorsement of the telegram implied a knowledge that a switch had been put in upon this siding, but we do not think that either his indorsement upon the telegram, or his duty as station agent, to which we shall hereafter refer, called upon him to personally in-

spect the location of the switch, and to have knowledge of all of the details which had attended its location; and we think that it would be error, as matter of law, to charge him with such knowledge.

The second group of facts relied upon to charge plaintiff with knowledge of the conditions which brought about his accident are as follows: The switch in question was put in about 125 feet from the station, and about 20 feet from the plaintiff's house. The book of rules furnished by defendant to plaintiff, and with which he must be assumed to have been familiar, contained, among other things, the following:

"They [station agents] will have charge of the business of the company at the station, all property connected therewith and all persons employed thereat.

"Keep the station and grounds in proper condition for the comfort and convenience of patrons.

"See that the station is furnished with the necessary lanterns, flags and brackets, and that they are ready for immediate use.

"They must know that all switches and frogs at their stations are in safe condition for use and that all signals are in working order.

"Be responsible for the care and display of switch lamps and see that they are lighted from sundown to sunrise."

Plaintiff gave evidence with reference to certain obstructions which prevented his seeing or knowing of this trench, and, by his evidence, made his knowledge thereof a question of fact for the jury, unless he is, by virtue of the rules above quoted, to be charged, as matter of law, with such knowledge. We think, again, that the defendant's contention in this respect is erroneous. Concededly, such work as the construction of switches and the supervision of tracks was not in defendant's line of duty, but was under the care and custody and control of another department of defendant's road. In a general way, the station agent was undoubtedly charged with general supervision of the property at and around the station. Under ordinary circumstances, as between him and the defendant, he was undoubtedly charged with the duty of knowing that the switches and signals were in working order around the station. But manifestly the rules upon this subject applied to switches and signals which were in use and operation. Concededly, the switch in question was not in safe condition for use while it was being constructed; and we do not think that it can be said, at least as a matter of law, that plaintiff was so charged with the duty of keeping watch of it while it was being put in, and before it was completed, that it can be held that he knew all about its condition, and the means and details which were being employed to get it into a condition where it could be operated.

Lastly, we do not regard the suggestion made by the learned trial justice in disposing of this case—that, if this trench had not been upon plaintiff's premises, he undoubtedly would have run into defendant's switch after he had proceeded further along—as a tenable ground for dismissing the complaint. We are not aware of any authority which has gone so far as to hold, under the circumstances of this case, that a defendant may be relieved of liability for a wrongful act upon the theory that, even if it had not acted improperly, still the plaintiff probably would have got injured in some other way. The judgment and order should be reversed.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except McLENNAN, P. J., and WILLIAMS, J., who dissent.